Timothy E. Herman Christopher Wormholt Good morning. We want to thank both parties for agreeing to conduct oral arguments remotely this morning. Just as if we were in the Elgin Courthouse, you will be given your regular allotted time of 15 minutes. When you are not arguing, as our clerk Jeff Kaplan said, please mute your phone. Each party will have 15 minutes for your main argument. The appellant will have five minutes for a rebuttal argument. As you heard, the clerk of the court will operate a timer signal. You'll be given a signal when there are five minutes remaining in your main argument. The purpose of the five-minute signal is to ensure that we have time for questions from the panel. As is our practice in the Second District, we've all read the briefs and we're familiar with the facts of the case, so there's no necessity of going into all the facts of the case. What will be different today is we will not be interrupting your arguments with questions as we usually do. Conducting oral arguments in that manner is awkward. So we'll save our questions until you complete your main argument. Keep in mind you are not required to use all of your time. Certainly if you complete your argument before the signal, invite us to ask questions at that time. We remind you that no one except the clerk of the court is permitted to record this argument. Do either of you have any questions about our format this morning? No, Your Honor. Thank you, Your Honor. Tim Herman, and may it please the court. I represent David A. Ashby, who was recently appointed Special Administrator of the Estate of David Wayne Ashby. Because the names are very similar, I'm going to refer to David Wayne Ashby today when I refer to him either as the plaintiff or as Wayne. David A. Ashby is Wayne's son, and David did pass away in March of this year. As the court knows from our briefs, this case involves a parcel of land, a five-acre parcel of land in Plainfield, Illinois, that was originally owned by the parents of Wayne and the other two parties in this case, Mark Ashby and Bonnie Pinnell. That property was, as the court knows, put into trust in October of 2003, and then in March of 2006, one of the settlers, or the second of the settlers passed away, and the property then became subject to the terms of the trust. As the court knows from our briefs, we filed an original complaint, which was then subsequently amended. There was an argument on a motion to dismiss on the amended complaint. The amended complaint was dismissed based upon the fact that the courts felt that we did not name a necessary party, which was the Kendall County Recorder of Deeds, because we had asked for deeds to be stricken from the record. Court gave us permission and leave to file a second amended complaint, which we did, and then there was another motion to dismiss that was filed relative to the second amended complaint, and that's ultimately what brings us here today. In our second amended complaint, we had essentially three causes of action. We had an action to quiet title, we had an action to do a partition or an equitable partition, and then we had claims for breach of fiduciary duty. When this trust was entered into in 2003, Wayne and Mark Ashby and Bonnie Ashby were co-trustees under the trust. They also became beneficiaries under the trust when the last of the settlers died in 2006. The trust required upon the death of the last settler that the trust estate be divided in, quote, equal shares. That's in the trust document. In the record on appeal, it would be common law record page nine or C9, where it says that the property was not divided at that point. It took about four more years before there was a September of 2010, two of the trustees who were defendants below deeded that five-acre parcel, two-thirds to the two of them and one-third to my client. It was our position in the court below that that division was improper for several reasons. Number one is that my client was not given notice that the other two trustees had acted or were going to act. Number two was that that division did not create an equal division of the property. Even though it was divided into thirds, the third that was given to my client was significantly less valuable than the third that was given to each of the other two. That violated the terms of the trust. It was our position below that, at a minimum, that created a question of fact that precluded Judge Below from dismissing the case on a 2619 motion. At the motion hearing, which occurred in August of 2019, the judge stated basically three reasons for dismissing the case. Those were the statute of limitations, which I know that there's some argument between the sides here on whether that applied to count one. We believe that the court did base its dismissal on count one on the statute of limitations. I think the record of the hearing at page R20, lines eight through 12, is pretty clear that the court said as to count one again, I think the statute of limitations prohibits that. The court also found that in count two that the trustees had an absolute right to act, and then obviously based count three on the statute of limitations that was breach of fiduciary duty. We believe that the dismissal based upon the statute of limitations for count one is, first of all, improper because the statute of limitations, at least in our position, is the 40-year statute of limitations found in section 13118 of the Code of Civil Procedure. The reason that we believe that is that that statute pertains to someone who is trying to establish an interest or a claim to property, which is exactly what so first of all, we believe that dismissing on the statute of limitations grounds was improper. There was also some discussion as to whether or not count one was even a proper action for quiet title. As we set forth in our briefs, we believe that it was because in 2006 when my client became a beneficiary of the property, he became essentially a co-tenant on a tenancy in common, and so he had an interest in and claim to one-third of the entire five-acre parcel. The deeds in 2010 were adverse to his interest in that property, and therefore the claim that he is making is an interest in or claim to his one-third interest in the whole five-acre parcel. We do believe that it was a proper quiet title action. As a result, we believe that the 40-year statute of limitations in 13118 applied and that the dismissal on that grounds was improper and that the court should reverse and remand as to count one. As to count two, the court below held that she felt that the trustees had an absolute right to act. Again, it's our position that because this was a 2619 motion to dismiss, that there either had to be some factual basis presented by the defendants below, the deputy in this case, by way of affidavit or some other type of affirmative matter in order for the court to make the factual determination that the trustees had an absolute right to act. Our response to the motion contained an affidavit. Our complaint was verified. Those were the facts that were in front of the court, and those are the facts because this was a 619 motion that the court had to accept those facts as true. There were no counterfacts that were provided by affidavit or by a verified answer or anything for that matter that the court could rely on besides the facts that were presented by the plaintiff. We believe that a finding of fact that the trustees had an absolute right to act in the manner that they did was a reversible error as to count two. There was also some discussion as to the statute entitled Majority of Trustees to Act 760 ILCS 5-10, and the court felt that the two trustees who executed these deeds also had authority to act under that statute. It's our position that the court just simply misconstrued the statute and failed to consider the clear language of the statute that required prior written notice to or written waiver of notice from a trustee when there's three or more trustees. If one of them is being excluded or is not going to make a decision that 5-10 of 760 ILCS requires either the prior written notice or the waiver of notice, and both the affidavit that we submitted in response to the motion to dismiss as well as the verified complaint had facts in there that Wayne or my client did not have any knowledge that these deeds were being executed in 2010, and so we believe that that was in violation of the majority of trustees to act, and that is another basis that the court committed reversible error by not interpreting that statute and not taking into consideration the facts pled in our complaint as well as the affidavit that we submitted in response to the motion to dismiss. Did that buzzer go off a while ago? Yes, it did. Oh, I'm sorry. I did not hear it on my end. What does the buzzer mean, that I have five minutes left, or is that time? You had five minutes when it went off, but do you have any more minutes to wrap it up, and then we'll open up for questions. Yes, just really quickly, on the breach of fiduciary duty counts, we believe that there was a tolling of the statute of limitations under the Fraudulent Concealment Act. We've set forth the arguments in our briefs, and so I'll close with that, and I'll just ask the court to reverse and remand for further proceedings. Justice Hutchinson, your questions. Thank you, Justice Burkett. Mr. Herman, I recognize that this is early, this action, dismissing the case is early in the proceedings, but how do we know that this distribution is not dismissed? We attached county real estate tax records, and when you look at those county real estate tax records, the one-third that was deeded to my client in the year that it was deeded had a combined net taxable value of $62,000. If you cut that in half, that's $31,000 a piece. It's about 156%, at least according to the net taxable value, about 156% greater in value, and that's at least facts that were presented to the court, so that's a question of material fact that we believe was something that precluded summary judgment on that issue, or I'm sorry, precluded dismissal on that issue. So, in fact, there is some evidence that this property had already been divided or was well, what happened was when it got deeded out of the trust, and the issue is that it was in the trust until 2010. In 2010, it got deeded out of the trust, and at the time that that happened, the other two trustees somehow were able to describe in the legal description on those this one-third that was deeded to my client and the two-thirds that were deeded to them, so that was picked up in the county tax records. There was a PIN number that was changed, but if you look at the deeds, it shows that it was divided that way through the transactions. Correct. Okay. All right. Now, your client, Wayne, is described as being homeless for some time. How would the defendants be able to find him, to give him notice if he was, in fact, homeless? Well, I think he had a P.O. box that that the defendants were aware of, but again, I think that's a question of fact, that at a minimum required some discovery and made it so that a motion to dismiss was not appropriate. That may be an argument that could be made at summary judgment by the other side. We just don't think that it was proper at the motion to dismiss stage. When the last settler died, was your client also residing in the property with his mother and father? I don't know if right at that time he was. I do know that at some point he lived there for a short period of time, for a couple of years, but I don't know if on the date that the last of the settlers died that he was living in the property. But by 2018 when this case was, I guess, brought to court, he was not residing there, correct? That's correct. Doesn't he need some sort of possession of the property in addition to his, he believes to be his, you know, his right pursuant to the trust to bring a quiet title action? Certainly. And in 2006, he did as a result of having the, as a result of the trust requiring that the property be divided in the third, so he becomes a one-third owner under co-tenancy of the whole five acres. He is not only entitled to an interest in it, but he's also entitled to a possessory interest. So between 2006 and 2010 when the property was deeded out of the trust, he did have a right to possession. And what we're arguing is that that possessory right gives him a claim to invalidate those 2010 deeds. So you're saying it's a possessory right rather than actual possession? Correct. And I think the cases that we cited in our reply brief talk about that issue and that, and talk about, so for example, the Dyspline case that we talked about, which is an older case from 1950, but it says that the words at death, after death, or upon death in a devise of a remainder do not refer to the time when the remainder is to vest an interest, but rather the time when the remainder men are to take possession. And there's a couple of other cases that we talked about that once that existence, that not only is there a legal right, but there's also a possessory right. All right. Thank you, counsel. And thank you, Justice Burkett. I don't have any other questions at this time. Justice Shostak. Did I just lose everybody or? No, I have a hard time taking my phone off of mute. That was my fault. The argument that you make the breach of fiduciary duty, excuse me, not breach of fiduciary duty, but the fraudulent concealment. How is there a fraudulent concealment for breach of fiduciary duty based on fraudulent concealment? When he could have, technically, he could have discovered the recording of deeds with Kendall County in September, couldn't he? I mean, they put him on notice of the deed's existence. Well, he could have, but the law of fraudulent concealment, as we cited cases in our brief, is that when there's a fiduciary relationship, which there is between some co-trustees, that there isn't an obligation to search for misfeasance or malfeasance. Silence on the part of the fiduciary is enough to have a fraudulent concealment act, at least in our position, spring forward. So that's what we're basing it on from a fraudulent concealment standpoint. Do you also rely on the trust act, which required the written notice? Yes, absolutely. We know that at least at this stage, there's been no evidence whatsoever from the other side that there was any notice that was provided. Okay. Now, you said that David is deceased. He passed away in March, I think on March 19th of this year. Did you change the caption of this case, or are we still under the same caption? I filed a motion that was granted last week to appoint his son, who is executor of his will, as special administrator. So the caption has not been changed, but he is now appointed special administrator of the estate of David Wayne Ashby. Yes. Okay. But we have the same caption. All right. Thank you. I don't have any further questions. Thank you, Justice Shostak. Again, to follow up on Justice Shostak's question, do you have any case where a person is not on constructive notice due to homelessness? I do not, Judge. This would be a case of first impression if we were to agree with your argument, correct? I believe so, yes. That's all I have. Mr. Canale, you'll have five minutes for rebuttal. Mr. Canale. Thank you, Your Honor. Thank you, Judge. This is Mr. Wormbold. Good morning, Your Honor. Good morning, Mr. Herman. I wanted to thank the court for having us and providing us the opportunity to present oral argument under these circumstances. We do appreciate it. May it please the court. Your Honor, this case is about a person who brought suit in a court of equity after sleeping on his rights for nearly a decade. This person violated the maxim, he who seeks equity must do equity. David Wayne Ashby, who I refer to as Wayne, was not simply a beneficiary under the trust. He was a co-trustee just like his brother, Mark Ashby, and just like his sister, Bonnie Pinnow. If you look at section four of the trust, it charges the trustees to hold, manage, care for, and protect the trust property. This was an ongoing and continuous obligation. And this responsibility applied to Wayne, Bonnie, and Mark equally. But despite this crystal clear directive, Wayne did absolutely nothing for the eight years that followed after the trustees deeds were executed. So in essence, when he brought suit in the lower court, he was asking the circuit court to just hit the reset button, forget or ignore the fact that he was in complete dereliction of his own duties to hold, manage, care for, and protect the trust property as co-trustee for nearly a decade. And what he wanted was to just bring the parties back to where they stood in 2010 right before the trustees deeds were executed, dividing up the property. With respect to Wayne's action to quiet title, the reason why it failed was because he did not have actual title. The trust documents make that clear and they're attached to Wayne's complaint. The deed and trust says, quote, no beneficiary here under shall have any title or interest, legal or equitable, in or to said real estate. In order to prevail in a quiet title action, the first thing you need is actual title. The two cases we cite, Marlowe v. Malone and the Gambino case stand for that proposition where a plaintiff does not have title in himself, he can't maintain an action to quiet title. The same exact concept or rationale applies to the equitable partition action. The party needs to be an owner of the real estate he is seeking to be equitably partitioned. So Wayne didn't have legal title, he didn't have equitable title, nor was he an owner. The 40-year statute of limitations only applies if he was. The second point I want to make, your honors, is Bonnie and Mark represent a majority of the trustees. And two out of three are competent to act in all cases. Returning to the trust document for a moment, if you look at section 4D, it provides they're authorized to do the following. They could sell, convey, exchange, transfer, or otherwise deal with the trust property. State law also allows the majority to act. There really isn't even a question as to whether the settlers of the trust envisioned the majority to rule. They did. If you look at section 5 of the two of three trustees. And then if you look a little further down on that document, in the fourth article, it says, quote, the validity and interpretation of the trust is governed by the law of Illinois. So the law of Illinois, what does that say? In 760 ILCS 5-10, which is what was applicable at the time the suit was filed and when the acts happened, it says if there are three or trustees of a trust, the majority of the trustees are competent to act in all cases after prior written notice to or written waiver of notice by each other trustee. So Wayne makes much to do about the lack of written notice. But the fact of the matter is he had notice. The entire world had notice of what happened. So Wayne shouldn't be afforded the ability to use that statute as a point to bring up is the fact that Wayne never argued lack of written notice in his written response to the motion to dismiss the second amended complaint when we were before the circuit court. Nor did he argue noncompliance with the statute at the hearing. That noncompliance argument was totally abandoned. So it should be considered waived. But even if this court were to consider the argument, as stated previously, Wayne was not just a beneficiary. He was a co-trustee and he was charged with an ongoing duty to hold, manage, care for, and protect the trust property. You know, and it's really hard to imagine that the legislature envisioned an act of the majority, which was authorized by the express provisions of the trust would be invalidated by an absent co-trustee who respectfully sat on his hands for nearly a decade with respect to his own duties that he had. There's a couple other points to consider with respect to the statute. The first is the legislature did not include any temporal requirement regarding when written notice should be provided by the majority. They did in other sections of the act. With respect to small trust termination, notice is required to be provided 30 days beforehand. The same applies when the trustee is delegating investment functions to an agent. You have to give 30 days notice. But with respect to the acts of the majority, there's no temporal requirement included in that provision. It's totally unclear and silent as to how much time is good notice. The second thing to consider is the legislature provided no consequence for failure to provide directly. But the bigger point here is that and this bigger point was not lost on the lower court either. The fact of the matter is Wayne had an ongoing responsibility to actively participate in the management of the trust property and the deeds were public record. The third point I want to make, your honors, is the only viable cause of action that Wayne arguably had was for breach of five-year statute of limitations had long ran by the time he brought suit. Wayne is charged with knowledge of the trustee's deeds being executed because once they were filed with the Kendall County recorder, they became matters of public record. He cannot hide behind that fact. So what we have here is not only did the trust require Wayne to be an active participant in the case, but what Wayne's sister did were matters of public record. They were known to him and the entire world. It's pretty clear that Wayne understood that he allowed the statute of limitations to run, which is why he took what I call a shotgun approach at tolling the statute of limitations period through either the discovery rule, the fraudulent concealment doctrine, or equitable tolling, hoping that one of those three things would stick. But none apply. With respect to discovery rule, the rule is applied on a case-by-case basis. And Wayne is claiming that the first time he discovered the acts of his brother and sister executing the trustee's deeds was June 14, 2018, nearly eight years after it had happened. But in order to believe that and accept that, this court and the lower court would have had to ignore the fact that Wayne had a continuing obligation to hold, manage, care for, and protect the trust property. He had skin in the game and he had an active duty to participate in the trust, and he didn't do that. So pleading ignorance to the eight-year state of affairs with respect to the trust property while simultaneously having that specific duty is a position that just totally defies common sense. Furthermore, the division of Wayne was charged with knowledge of the conveyances, and the Skrodsky case we cite stands for that proposition. It says records of the recorder's office are public records open and alike to all parties. Equitable tolling doesn't apply to this case either and should not apply in tolling the five-year statute of limitations. Wayne relies on the Clay v. Cull case, which stated that equitable tolling did not apply to this case. So the question is, which of those three propositions applies to him? And that's because none of them do. Instead of stating which three apply, Wayne instead pivots, arguing that he had supposedly some irredeemable lack of information based on the fact he didn't have a computer, he didn't have internet access, and he lacked a physical home address. Those three things are not the functional equivalent to having an irredeemable lack of information, and he cited no case that stands for such a proposition. The Thiede v. Cassis case, which he cites that talked about irredeemable lack of information, doesn't stand for that proposition. Fraudulent concealment doesn't apply for the exact same reasons, Your Honor. There was no concealment of a material fact. The facts that he complains of were matters of public record. Wayne should have discovered the trustee's deeds through ordinary diligence, and he cannot claim he would have been unable to learn about the trustee's deeds through a reasonable inquiry because they were there for him and the entire world to see. Property tax bills issued twice a year, every year, after 2010 when the trustee's deeds were executed. Wayne had more than a reasonable amount of time to bring suit for breach of fiduciary duty, and he just simply failed to do so. The law gave him nearly half a decade, or did give him half a decade. Five years to bring suit, Wayne waited eight, and the lower court was correct in refusing to toll the statute of limitations period, so we ask that the decision of the lower court should be upheld. That concludes the points I wanted to make, Your Honors. I'm happy to take your questions at this point. Thank you, Mr. Wormald. Justice Hutchinson, your questions. Mr. Wormald, I sort of lost count of the times that you called Wayne a co-trustee, but I know there were many. And as each time you raised it, you said manage, hold, manage, and maintain. Well, wouldn't what was required to hold, manage, and maintain amount to significant material facts that needed to be determined in this case? Because I don't believe there were any that were cited. No, Judge. When I bring up the fact that he had an ongoing duty to hold, manage, and maintain the property, the point of that is Wayne can't claim ignorance with respect to the goings on and the management of that parcel of land. He had a continuing obligation to know and apprise himself of what was happening with that property. He had a fiduciary duty to his brother and sister just like they did to him. So because he had that responsibility, he can't hide behind the fact and claim that he didn't know what was going on for eight years when he had an active duty to know exactly what was going on for eight years. Well, it may not be his issue. It may be an issue for this court. You've asked the trial court and were granted that right to dismiss this based upon his failure to act. What is he supposed to do? We don't know what hold, manage, and maintain means. And I believe that would be something a court should be advised of before it can make a decision of this nature. Correct? Well, Judge, I respectfully disagree. I think hold, manage, care for, and protect the trust property to me means that he had to know what was going on with the trust property. It's certainly irreconcilable to have that duty while at the same time doing absolutely nothing for nearly a decade. And that's unquestionable. That fact is raised in the pleading. Mr. Herman states that Wayne did not know what was going on with the property, and he had no idea what his brother and sister did back in 2010. Well, the only way that could be possible is if he was in total dereliction of his own duties. In addition to that, as I stated, this is a matter of public record. So even if he set aside the fact that he wasn't holding his end of the bargain with respect to being a co-trustee and managing this property, he was put on notice just like the whole world was put on notice once the trustee's deeds were executed and recorded with the Kento County Recorder. Well, he was a co-trustee for four years. The last death was in 2006, and the transaction occurred in 2010. You're saying that holding, manage, and maintain required these people to act in this way, your clients to act in this way because they could not afford to do it themselves, they couldn't handle it themselves. What was the reason? No, I'm not saying that they were required to do anything a particular way. What I'm saying is that when he had that duty, he had to know what was going on with the property. Those are all active adjectives, to hold, manage, care for, and protect the trust property. And in addition to that, it was brought up earlier, I believe it may have been your line of questioning, your honor, with respect to whether Wayne lived on the property or not. He did. He lived on that property after the last of the settlers passed away. He lived there for approximately three years prior to leaving. So at one point, he involved himself with the management of the trust property, and then he just abandoned his responsibilities for whatever reason. And despite that fact, I'm sorry, your honor. Well, I guess the question arising from this little bit of fact is, so what did they do to help him hold, manage, and maintain during those years? Now, again, my issue is, aren't there facts that we don't know that should have been determined before this case could be dismissed? And I think your answer is no. And we'll leave it at that for now. Did he, during these three years he was living there, after he left, for the year between, that would be 09 and 10, did he receive any sort of communication from his sister and brother? He received tax bills, your honor. Okay. And did he pay them? He did not pay them. He did not pay them. His brother and sister paid them. They maintained their end of the bargain, your honor. They actively held, managed, and cared for the property. They paid the property taxes. Wayne did not. He allowed the property to fall into total disrepair. It fell down? No, it was damaged, your honor. It did not fall down. All right. Justice Perpetz, thank you. I have no further questions. Thank you, Justice Hutchinson. Justice Shostak, your questions? Judge, you're muted again. Justice Shostak? I'm sorry. And I said something so brilliant. I'm kidding. Anyway, I'm going to talk to you about quiet title. You indicated that he cannot raise quiet title because he doesn't own the property or doesn't live on the property. However, a quiet title action, if he can establish fraud or some other equitable claim, he can raise quiet title, can't he? No, your honor. I don't believe he can. If you refer back to the deed and trust, which was attached to Wayne's complaint, it says towards the end, and this was in the appendix at A19, with respect to each and every beneficiary under the trust, that such interest that they have in the sale or disposition of the real estate is that it states that no beneficiary here under shall have any title or interest, legal or equitable, in or to said real estate, but only an interest in the earnings, avails, and proceeds thereof. So he never had title. The deed and trust says that. He didn't have title legally or equitably. And that's a precursor to have a quiet title action. You have to have actual title, which is why our position is that the only claim arguably that Wayne may have had would have been that breach of fiduciary duty claim, but it's stale. It ran three years prior to him bringing suit. I think Justice Hutchinson hit on this. Does that issue, if you argue, if he's going to argue he has equitable right to seek the quiet of title, would that create a genuine issue of material fact? Or is it, I would assume you feel it's something for 2619. No, it wouldn't create an issue because the deed and trust makes clear that he does not have legal or equitable interest in the real estate. I mean, that's abundantly clear, and that was attached to his second amended complaint judge as an exhibit. There's no question as to whether he had title or not. He didn't. You know, I brought this up when your opponent was speaking. The trust stated that the parties were required to comply with the trust act. And in this case, the trust act required notice, did it not? That's right, Judge. In the statute, it does state that you were to provide written notice. This is a little bit of a unique situation here because the act doesn't provide for what is to happen if notice isn't provided. That's one. But two, this is also a unique situation because Wayne was supposed to know what was going on. He lived on the property for a number of years. And then he was just, he was totally absent. He was in total dereliction of his duties. But the act that he is complaining of, he had constructive notice of, and the whole world had constructive notice of, because it was a public record. As soon as it was recorded with the Kendall County recorder, and I think you were the one that brought that up to Mr. Herman, Judge. That's just a fact. He can't get around that. Right. Now, I have a bit of an issue with your mandatory directory distinction. How is that applicable here? I thought that that only applied to government action. Judge, the cases that we cite do deal with government actors, but the statute does not. Right. But the statute doesn't provide any consequence for what is to happen should someone fail to provide written notice. So that's why we are of the mindset and the position that we submit to the court that it should just be directory. And I think you have to consider, again, all the facts of this case, that this wasn't just someone who was simply a beneficiary. This was someone who had an active duty to participate in the management of the trust estate. So it would be one thing if he didn't have that responsibility. He did. But it was also a matter of public record. It was filed with the recorder. Right. Now, the complaint that the received first notice and also equal share of the property. Aren't those factual questions to be resolved, not in a motion to dismiss, but by a trial of facts? No. Whether he received an equitable portion or a fair portion of that property. Equal share. Equal share, as the trust said. Right. And equal share. That goes to whatever his amount of damages were. I think that goes and applies to the breach of fiduciary duty claim. That's the only cause of action I think Wayne Ashby arguably had. But he had five years to assert that after 2010 when the deeds were recorded. And then that case could have proceeded on. But the fact of the matter is that nearly a with his explanation as to why he was bringing suit in 2018 when these action that he's complaining of happened back in 2010 when he had an ongoing and active responsibility to participate in the management of the property. It didn't impress the circuit court. And that's why the circuit court did not toll the statute of limitations for any of the three reasons that were requested. So you if what he's speaking is not anything other than the way I'm reading is in place to trust the property back in trust and divide it equally, correct? Yeah, I think that's exactly what what Wayne's position was. As I had said, I ultimately when he brought suit, he was asking the lower court to just what I call hit the reset button. He wanted the court to just forget about everything that transpired for about 10 years, and just go back in time to 2010. And let's just essentially get a do over. And the court wasn't willing to do that. Thank you. I have no further questions. Thank you, Josh. Thank you, Mr. Warmbould. Is your argument, you know, actually, I don't know how many times you've said the same thing, but with respect to Wayne's failure to act or failure to live up to his responsibilities? Does that excuse the defendants from their notice requirement? Well, it was a matter again, judge, it was a matter of public record. I think that ultimately, if you were to balance all of these things, it still weighs in Bonnie and Mark's favor here. Because this one, this wasn't just this wasn't just a matter of public record what they did. Wayne had a continuing obligation to apprise himself in the management of the property and know what was going on. And he just didn't do that. He then again, I'm sorry, Josh. Yeah, I want to redirect you. My question is, does the fact that he failed to take action during those eight years excuse the defendants from giving him notice under the Trust Act under Section 10? It should judge what Wayne Ashby, Wayne Ashby lived on the property here are he lived on that property, he was he was there for approximately three years. And then he just he essentially fell off the face of the earth for a number of years. And it was up to him. And it was up to his brother and sister to make sure that that that the directives that were charged to all three of those siblings were carried out. What does competent to act mean? In the Trust Act? You rely on the competent to act language. That's right. But what does it mean with respect to providing notice? Well, to me competent to act, Your Honor just means it means simply that that they can act. It's a way to deal with a situation where the management of a trust or whether that an odd number or certain number of co trustees if they were to be in some sort of impasse with respect to how they how they were going to handle the management or the protection of the property. Competent to act means, well, as long as there's a majority, two out of three can carry out whatever their intentions are. And that's what the case was here. Bonnie and Mark represented two out of three. Well, the record is not fully developed, is it with respect to what Wayne did or did not do before he left the property, right? There's no there's no evidence in the record, is there? Right there? Well, there's no evidence in the record as far as what he did after leaving the property. But but it's pretty clear based on the pleadings and the and the brief, the briefs that were submitted with respect to the motion to dismiss that Wayne is admitting to the court that he did nothing. He knew nothing about anything with respect to that property until he received some phone call in June of 2018. And that's when he supposedly found out about these trustees deeds that were executed eight years prior to that. And with respect to that, Judge, you know, it it's not just what Wayne says, it's what he doesn't say. If if Wayne was involved with the management of the trust property, he would have brought that up in his affidavit. And he failed to do that. So it's not just it's not just what Wayne said, it's what he didn't say. That's important here. Thank you. Were there other assets in the trust? Aside from the real estate? No, Judge, this just dealt with the real property that five acre parcel. So the position that the defendants would take is that there, there was this was a fair split. That's right, Judge, that's their position. And if and if Wayne thought otherwise, which he apparently did come 2018, he had five years to bring that grievance to the court, and he just failed to do so. Finally, our review is de novo. It's not abuse of discretion. And in your in your brief, you you discuss the trial courts exercise of description, but our review is the novel you acknowledge that correct? That's right. All right. All right. Thank you. Well, thank you, Your Honor. Thank you. The court thanks both parties for the quality of your arguments this morning. The case will be taken under advice. Do you need judge? We're due for a written decision. Oh, I'm sorry. I'm sorry about that. Sorry. Mr. Mr. Herman, rebuttal. Thank Thank you, Justice. Just a couple of quick things. First of all, there was a lot of questions and a lot of discussion about whether Wayne was living on the property. Those facts were not before the trial court in any way. So it shouldn't be something that on a de novo review is even considered on a 2619 motion to dismiss or review of a 2619 motion to dismiss. With respect, with respect to the Trust Act, Section five, dash 10. That statute was clearly in front of the court and the court clearly had a duty to interpret the statute as a whole. The important thing that I want to point out with that is that it uses the words prior written notice, which the word prior means that the notice has to be given before an action is by my opposing counsel is that the act of recording the deed was noticed, but that's not prior notice. That's subsequent notice. And so I don't think there's been a single fact that shows that there was any prior notice or even an attempt of prior notice that was that was given with respect to to the to the quiet title action. There's reference to this deed and trust in 2003 that talks about the interests of the parties. What is being lost there is that that deed is before the last of the settlers died. When the last of the settlers died, the trust required that the property be divided equally among the beneficiaries. And so that's where the interest arises at that point. And then Justice Burkett, you asked about other assets in the record. At C12, there's a schedule of assets and there's two additional assets. They're both annuity policies or contracts that are that are part of the schedule of assets. So there was this real estate and then the two annuity policies. I don't think there's been any evidence that's been presented of what happened with those policies. That could be something that gets developed on remand during discovery. Thank you for your time. And that's all that I have. Thank you, Justice Hutchinson. Any other questions? No, I do not. Thank you, Justice Burkett. Justice Shostak, any more questions? No questions. No questions. Thank you. Very well. Sorry for jumping the gun earlier, Mr. Herman. I didn't mean that as any slight to you. That's okay. The court thanks both parties for the quality of your arguments, especially for participating in oral argument remotely. The case will be taken under advisement. A written decision will be issued in due course. The court stands adjourned for the day. Thank you. Thank you, Justice. Thank you, Your Honor.